{¶ 6} We continue to believe State ex rel. Olander v. French (July 16, 1996), Franklin App. No. 96AP-501, affirmed (1997), 79 Ohio St.3d 176
was wrongly decided. While the Supreme Court affirmed Olander, it did so without addressing that aspect of the decision implicated in this case. Nonetheless, because Olander has not been overruled and remains the law in this district, we reluctantly concur.
 IN MANDAMUS ON MOTIONS {¶ 7} This matter is before the magistrate pursuant to an entry dated June 17, 2003, in which the court overruled objections to the magistrate's decision of January 15, 2003, adopted the magistrate's decision, and referred the action back to the magistrate to address additional motions that were filed after the magistrate's decision was rendered. The following motions are addressed herein:
 {¶ 8} 1. Respondents' motions filed January 27, 2003, captioned "Motion to Strike and Seal Portions of the Record and Motion for a Protective Order" (docketed by the clerk of court as three separate motions);
 {¶ 9} 2. Respondents' motions filed February 11, 2003, captioned "Second Motion to Strike and Seal Portions of the Record and Motion for a Protective Order" (docketed by the clerk as three motions); and
 {¶ 10} 3. Respondents' motion filed February 28, 2003, captioned "Motion to Strike Reply of Relator to Motions to Strike as Untimely Filed."
 {¶ 11} This original action in mandamus was filed in October 2002 by Mark A. Leslie ("Leslie") who named as respondents the State Treasurer, State Auditor ("Auditor"), the Ohio Housing Finance Agency ("OHFA") and its directors, the Ohio Department of Commerce ("DOC"), the Ohio Department of Development ("DOD"), Marlo Tannous in her role as the DOD's chief legal counsel, and various employees, agents, and/or board members of these agencies and departments. In his complaint, Leslie alleged that, until March 1, 2002, he was employed by the DOD as chief of compliance with responsibilities including the administration of certain ministerial functions of OHFA in compliance with state law.
 {¶ 12} Respondents filed separate motions to dismiss on December 10, 2002. The Auditor's motion was based on multiple distinct grounds, one of which was that the Auditor had already complied with his duty to conduct audits, as evidenced by the audit reports attached to the motion. Because the Auditor had relied on matters outside the pleadings with respect to one of his grounds for dismissal, the magistrate ordered that the motion be treated as a "motion to dismiss or in the alternative for summary judgment."
 {¶ 13} The magistrate set a deadline for Leslie to respond to the motions to dismiss by December 30, 2002. With respect to filing evidence under Civ.R. 56, the magistrate set a deadline of January 30, 2003, for the filing of materials pertinent to the Auditor's alternative motion for summary judgment.
 {¶ 14} On December 30, 2002, Leslie filed a memorandum in opposition to the dismissal motions, captioned "Reply of Relator to Motions to Dismiss." On pages 26 through 34 of that memorandum, Leslie included two lengthy endnotes. In the first note, titled "JUDICIAL NOTICE," Leslie alleged the existence of various documents and then purported to describe, summarize and/or quote each document, in items listed A through V. For example, Leslie described the contents of a governor's press release, an article said to have appeared in TheColumbus Dispatch, a complaint he filed with the Personnel Board of Review, an OHFA report, a compilation of OHFA loan guidelines, an OHFA audit report, a Small Business Administration report, a Federal Housing Administration report, a U.S. Department of Housing and Urban Development report, and other documents. In item S, Leslie described an alleged "Email exchange" between Tannous, OHFA directors, and others regarding OHFA compliance with R.C. 119.032.
 {¶ 15} In the second endnote, Leslie set forth an explanation and defense in regard to his discharge from the DOD and described his educational achievements, public service activities, religious activities, and occupational achievements. He described aspects of his personal life and asserted fiduciary duties to Ohio citizens. In this note, Leslie conceded that its contents were irrelevant to the issues in mandamus.
 {¶ 16} On January 15, 2003, the magistrate rendered a decision recommending that the court grant respondents' motions to dismiss. On January 16, 2003, the magistrate issued an order stating that, based on the conclusion that the complaint failed to state a claim on which relief in mandamus could be granted, the Auditor's alternative motion for summary judgment was moot.
 {¶ 17} In the meantime, however, on January 14, 2003, Leslie filed a "reply" to the Auditor's motion for summary judgment. Leslie signed the document as an attorney licensed to practice in Ohio under registration number 002928. In support of this reply, Leslie filed an affidavit setting forth further allegations regarding his claims that OHFA was disbursing funds in violation of R.C. Chapter 175, that the State Treasurer was making deposits in violation of R.C. Chapter 135, that the DOC was wrongfully disbursing funds, and that OHFA had directed the DOC to disburse funds in violation of R.C. 169.05. Leslie attached 19 documents to his affidavit as follows:
 {¶ 18} Attachment 1: a copy of a document titled "2002 Affordable Housing Loan Guidelines," which Leslie stated in his affidavit was copied "from OHFA's web site."
 {¶ 19} Attachment 2: a copy of a document titled "From Wall Street to Main Street: The Story of the Ohio Housing Finance Agency," and another document that appears to be a cover memorandum from the OHFA director to the OHFA staff upon providing copies of the report to the staff in December 1990.
 {¶ 20} Attachment 3: a copy of a July 31, 2000 memorandum from Leslie to Tannous with an August 29, 2000 addendum, in which Leslie questions OHFA transactions and policies, and recited conversations he had with OHFA officials on these issues.
 {¶ 21} Attachment 4: a copy of a September 1, 2000 memorandum from Leslie to Tannous and OHFA officials regarding "Communications to Board Members, Mr. Peck and others," wherein Leslie submitted for consideration his proposals for certain letters. (In his affidavit, Leslie states that the proposals included a draft "template letter" from one of the OHFA directors to attorney John Peck, and that the template was reviewed by the director but never sent to Peck and that the other letters were never sent as Leslie proposed. In his affidavit, Leslie asserts that the draft demonstrates that the OHFA directors and Tannous "were previously notified" of his concerns about statutory authority for a certain loan program.)
 {¶ 22} Attachment 5: a copy of a November 1, 2000 facsimile transmission from Leslie to Peck, attaching an October 24, 2000 memorandum raising various issues as to OHFA operation.
 {¶ 23} Attachment 6: a copy of an email message from Tannous to Leslie, forwarding to him a copy of an email message that Tannous had received from OHFA's executive director, in which the director recounted a conversation he had with Tannous and gave his ideas on several issues and "perplexing problems" under state law.
 {¶ 24} Attachment 7: a copy of three charts that summarize loan closings. (In his affidavit, Leslie asserts that the charts show that, although he "was notifying the Respondents of problems with OHFA's business practices," he was nonetheless closing many loans.)
 {¶ 25} Attachment 8: a copy of a "Management Letter" from the Auditor to OHFA regarding the audit of OHFA for the year ending June 30, 2001. (In his affidavit, Leslie states that he obtained a copy of the document via email from the office of the Attorney General. Leslie asserts that the letter shows that the Auditor was aware that the DOD staff were not in full compliance with the law.)
 {¶ 26} Attachment 9: a copy of pages from the Auditor's report on the regular audit of OHFA for the year ending June 30, 2001. (In his affidavit, Leslie states that the pages were copied "from the Auditor's web site.")
 {¶ 27} Attachment 10: a copy of pages from the Auditor's report on the regular audit of OHFA for the year ending June 30, 2002. (In his affidavit, Leslie states that the pages were copied from the Auditor's website. Leslie asserts that the report includes the Auditor's statements concerning compliance with certain laws but "does not disclose or discuss any of the violations and noncompliance alleged in the complaint.")
 {¶ 28} Attachment 11: a copy of a January 30, 2001 memorandum from Leslie to Tannous and an OHFA director regarding his view that the agency's seed-money loans violated certain statutory limitations. (In his affidavit, Leslie states that he misdated the memorandum, which was written in January 2002.)
 {¶ 29} Attachment 12: a copy of a February 2002 email message from OHFA's executive director to Tannous and OHFA's development director regarding Leslie's challenges to certain loans and enclosing a January 2002 email from the development director to Tannous (copied to Leslie), stating disagreement with Leslie's interpretation of statutory provisions and setting forth the legal basis for the agency's procedures and further stating dissatisfaction with Leslie's lack of familiarity with the law. (In his affidavit, Leslie states that he obtained the copy of the email from "the office of the Attorney General.")
 {¶ 30} Attachment 13: a copy of four pages from the state treasurer's "Annual Report for Fiscal Year 2001." (Leslie says he printed them from the treasurer's website.)
 {¶ 31} Attachment 14: an unsigned copy of a February 2002 letter from an OHFA director to a bank officer regarding the question of whether certain funds deposited by OHFA were "public monies." (Leslie alleges that this was only a draft.)
 {¶ 32} Attachment 15: a copy of a February 5, 2002 email message to Leslie from an OHFA official stating the official's view regarding certain funds on deposit at a bank, and also forwarding two February 4, 2002 emails — messages between the official and an OHFA director on how to respond to a legal question from the bank.
 {¶ 33} Attachment 16: a copy of a February 2002 email from Leslie to the OHFA official, the director, and Tannous, stating his views on the question posed by the bank.
 {¶ 34} Attachment 17(a): a copy of a request for public records made by Leslie to the DOC in April 2002, requesting documents and answers to several questions.
 {¶ 35} Attachment 17(b): a copy of the May 2002 response from the DOC to Leslie's requests.
 {¶ 36} Attachment 17(c): a copy of an email message from Leslie to a DOC official, requesting further documents and answers to more questions.
 {¶ 37} Attachment 17(d): a copy of the May 23, 2002 response to Leslie's requests.
 {¶ 38} Attachment 17(e): a copy of a May 28, 2002 letter from Leslie to the DOC requesting further documents and asking further questions.
 {¶ 39} Attachment 17(f): a copy of a July 2002 letter answering the questions.
 {¶ 40} Attachment 18: a copy of an October 2002 letter from Leslie to the office of the State Treasurer including an assertion that OHFA had disbursed funds in violation of state law. Leslie posed questions of fact and law for the treasurer to answer, requested public records, and argued that certain monies cannot be used in certain ways and/or attributed to certain accounts.
 {¶ 41} Attachment 19: a copy of minutes of an OHFA subcommittee meeting in December 2000.
 {¶ 42} After Leslie filed his affidavit and 19 attachments on January 14, 2003, the OHFA respondents and Tannous (referred to herein as "respondents") filed a "Motion to Strike and Seal Portions of the Record and Motion for a Protective Order" on January 27, 2003. In this motion, respondents asked the court to strike the endnotes in Leslie's "Reply of Relator to Motions to Dismiss" filed December 30, 2002. Second, respondents re-quested that those portions of the endnotes protected by the attorney-client privilege be sealed. Third, respondents requested a protective order under Civ.R. 26(C).
 {¶ 43} On February 11, 2003, respondents filed a "Second Motion to Strike and Seal Portions of the Record and Motion for a Protective Order." In this motion, respondents requested that Leslie's January 14, 2003 affidavit and attachments be stricken and/or sealed pursuant to Civ.R. 12(F) and the attorney-client privilege as recognized at common law and in R.C. 2317.02(A). Alternatively, respondents argued that the attachments could be stricken as moot. The motion also included a renewed request for a protective order.
 {¶ 44} On February 20, 2003, Leslie filed a "Reply of Relator to Motions to Strike and Seal Portions of the Record and Motion for Protective Order." Leslie attached more documents to this memorandum, as follows, but there is no affidavit attempting to authenticate the copies:
 {¶ 45} Attachment A: a copy of an email sent by Leslie to attorneys for respondents in the present mandamus action, regarding a stipulation of facts.
 {¶ 46} Attachment B: a copy of a January 1998 letter from the DOD's general counsel to the First Assistant Attorney General, William Klatt, regarding a job description for the position of "Chief of Compliance" and the hiring of Peter Patitsas to fill the position.
 {¶ 47} Attachment C: a copy of a job description for the DOD's Chief of Compliance.
 {¶ 48} Attachment D: a copy of a February 1998 letter from the DOD's general counsel to Mr. Klatt regarding the employment offer to Mr. Patitsas.
 {¶ 49} Attachment E: a copy of an email from Vickie Conrad regarding "Legal Office," describing changes in personnel and new duties for certain DOD employees.
 {¶ 50} Attachment F: a copy of an email from Mr. Patitsas regarding his position description.
 {¶ 51} Attachment G: a copy of a "Position Description Authorization" form dated April 28, 2000, requesting that the division of personnel approve a classification change for DOD payroll number 195-000 to "Administrative Staff." The lines for indicating approval/disapproval are blank. The second page is a position description for "Chief of Compliance" dated April 4, 2000.
 {¶ 52} Attachment H-1: a copy of Leslie's May 9, 2002 letter to Tannous requesting records regarding his termination of employment, especially any documents relating to informal warnings allegedly given to him or expressing dissatisfaction with his performance.
 {¶ 53} Attachment H-2: copies of email messages and a memorandum that appear to be the same as in Attachment 12 described above.
 {¶ 54} Attachment H-3: copies of emails including Leslie's October 2001 message to multiple persons (an OHFA director, Tannous, and others) regarding a secretarial position at OHFA, and an October 2001 message from an OHFA director to Tannous expressing displeasure at Leslie's interference in hiring matters.
 {¶ 55} Attachment H-4: copies of emails regarding the secretarial vacancy, including Tannous' message to Leslie that his emails regarding the vacancy were inappropriate.
 {¶ 56} Attachment I: a copy of an email message from the executive director of OHFA to Tannous and others regarding compliance with administrative rules, with a copy of Tannous' response to the director and others, and a copy of a postmarked envelope addressed to Leslie.
 {¶ 57} On February 28, 2003, respondents moved to strike Leslie's February 20, 2003 reply titled "Reply of Relator to Motions to Strike and Seal Portions of the Record and Motion for Protective Order" as untimely. In addition, respondents ask the court to strike and seal those portions of the reply and its attachments that were protected by the attorney-client privilege.
 {¶ 58} On March 5, 2003, Leslie filed a "Motion to Schedule an InCamera Inspection of the Documentary Evidence Submitted by Relator and to Establish the Standards for Such Review." On March 13, 2003, the court denied the motion.
 {¶ 59} On June 17, 2003, the court overruled Leslie's objections to the magistrate's decision, adopted the magistrate's decision (concluding that the complaint failed to state a claim on which relief in mandamus can be granted), and referred the matter back to the magistrate to address the pending motions.
 {¶ 60} The first set of motions were filed January 27, 2003, and captioned "Motion to Strike and Seal Portions of the Record and Motion for a Protective Order." In this motion, respondents request that the court: (1) strike the endnotes in the "Reply of Relator to Motions to Dismiss" filed December 30, 2002; (2) seal portions of the endnotes protected by the attorney-client privilege as set forth at common law and as codified at R.C. 2317.02(A); and (3) issue a protective order prohibiting Leslie (a) from seeking discovery in any manner other than in full compliance with the Civil Rules and solely through counsel, (b) from seeking discovery directly from OHFA's agents and employees, and (c) from submitting any documents or statements in contravention of the attorney-client privilege.
 {¶ 61} First, the magistrate addresses the relevance of the endnotes that Leslie appended to his December 30, 2002 memorandum in opposition to respondents' motions to dismiss. Motions to dismiss under Civ.R. 12(B) test the sufficiency of the complaint. As the magistrate stated in the January 2003 decision considering the motions to dismiss, the court, when considering a motion to dismiss, treats all factual allegations in the complaint as if proven and determines whether, accepting the factual allegations in the complaint, the plaintiff or relator has nonetheless failed to state a claim on which relief can be granted. Cincinnati v. Beretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480. Therefore, in a memorandum opposing dismissal under Civ.R. 12(B), supporting evidence is unnecessary and irrelevant. Accordingly, in the present action, the alleged facts in the endnotes were irrelevant to whether the court should grant or deny respondents' motions to dismiss under Civ.R. 12(B)(6).
 {¶ 62} Therefore, to the extent that the allegations in the endnotes were intended as evidentiary support for the complaint, the allegations are stricken as wholly irrelevant to the issues under Civ.R. 12(B). In the alternative, the magistrate concludes that, to the extent that the factual allegations in the endnotes were intended to supplement or amend the allegations in the complaint, Leslie failed to comply with the requirements of Civ.R. 15 for amending his complaint, and the endnotes are stricken for failure to comply with Civ.R. 15. The motion to strike the endnotes is, therefore, granted.
 {¶ 63} With respect to sealing portions of the endnotes based on attorney-client privilege, respondents identify only one document that they argue contains a communication protected from disclosure by the attorney-client privilege, item S of endnote 1, which purports to quote a May 13, 2002 email message from an OHFA director to Tannous. However, in respondents' memorandum in support of the motion to strike and seal, respondents provide no discussion of the law governing attorney-client privilege, asserting only that they intend to discuss attorney-client privilege "in a subsequent motion and memorandum."
 {¶ 64} The magistrate is unaware of a procedure under which a party files a motion requesting relief but fails to explain the basis for granting that relief in his motion, stating only that the party will discuss the matter "in a subsequent motion and memorandum." In general, a party is expected to support his motion within the motion, not to tell the court that it will file another motion and memorandum, later, that will support the present motion. Accordingly, the magistrate denies the January 27, 2003 request to seal portions of the record based on attorney-client privilege.
 {¶ 65} Third, respondents requested a protective order prohibiting Leslie from engaging in a variety of activities that are described in broad terms. Apparently, respondents want to stop Leslie from obtaining information from any of his former co-workers at OHFA or the DOD. The magistrate concludes that respondents have not met their burden of proof in establishing that the court must issue the order requested. Respondents provide no legal precedent to support the granting of the requested relief other than noting the general availability of protective orders under Civ.R. 26 and the existence of the attorney-client privilege. Further, respondents make factual assertions in the motion without providing evidentiary support. For example, respondents assert that Leslie must have obtained some documents unlawfully, because they never gave him, in response to his public-records requests, a copy of a May 2002 email message. However, respondents provide no documentation of that fact, such as an affidavit from the person(s) who prepared the state's responses to Leslie's requests for records, testifying as to what documents were sent — or not sent — to Leslie in response to all his public-records requests. Further, although the requested protection is based in part on attorney-client principles, respondents omitted a discussion of attorney-client duties and privileges, as indicated above. Therefore, the magistrate denies the protective order requested in the January 2003 motion.
 {¶ 66} In summary, with respect to the January 27, 2003 motions captioned "Motion to Strike and Seal Portions of the Record and Motion for a Protective Order," the magistrate grants respondents' motion to strike the endnotes in Leslie's December 30, 2002 memorandum, but denies respondents' motion to seal and for protective order.
 {¶ 67} Next, the magistrate addresses respondents' motions filed February 11, 2003, captioned "Second Motion to Strike and Seal Portions of the Record and Motion for Protective Order." In this motion, respondents ask the court to strike Leslie's affidavit filed on January 14, 2003, and to strike the numerous attached documents (numbered 1 through 19, with subparts) and to seal portions of the affidavit and documents based on attorney-client privilege. Further, respondents reiterated their request for a protective order prohibiting relator from engaging in a variety of activities. In addition, respondent reiterated their request to strike and seal the endnotes.
 {¶ 68} First, the magistrate addresses the request to strike Leslie's documentary attachments in whole or in part. Respondents make a blanket assertion that the documents must be stricken due to lack of authentication, lack of relevance, attorney-client privilege, attorney work product, lack of the required elements for judicial notice, and other reasons.
 {¶ 69} With regard to authentication, the magistrate notes that respondents merely assert generally that none of the documents are properly authenticated, without an explanation as to why Leslie's affidavit purporting to authenticate the copies was inadequate. For example, although several documents appear at first glance to be government publications or government documents, respondents set forth no argument as to why none of the documents qualify for self-authentication under Evid.R. 902 as "official publications" or "public documents." Likewise, it appears that several documents are memoranda authored by Leslie, yet respondents give no explanation as to why the author cannot authenticate a copy of his memorandum. See Evid.R. 901(B)(1) (regarding authentication via testimony of a witness with knowledge).
 {¶ 70} In sum, respondents made a sweeping, general statement that none of the documents are properly authenticated without explaining why the documents are not authenticated by the accompanying affidavit. The magistrate finds the respondents' motion insufficient. Although valid challenges might be made with respect to some of the documents,[1] it is not the court's role to make determinations based on potential arguments.
 {¶ 71} Second, the magistrate considers respondents' arguments regarding the relevance of the affidavit and documents filed January 14, 2003. Again, respondents make a sweeping argument that none of the proffered evidence has any relevance.
 {¶ 72} The magistrate notes at the outset that Leslie offered these documents in opposition to a motion for summary judgment under Civ.R. 56, not in opposition to a motion to dismiss under Civ.R. 12(B). Under Civ.R. 56, a party generally may file affidavits and documentary evidence, and, in this case, the magistrate had set a deadline for submitting evidence under Civ.R. 56. When Leslie filed his affidavit and documents on January 14, 2003, the Auditor's alternative motion for summary judgment was still pending and the evidentiary deadline had not passed. Therefore, the affidavit and documents were not irrelevant across the board regardless of specific content, as were the evidentiary endnotes discussed above.
 {¶ 73} The magistrate concludes that respondents have failed to make sufficiently specific objections to relevance and, therefore, declines to exclude the documents on grounds of irrelevance. This is not an affirmative finding, however, that the documents are relevant and otherwise admissible. Indeed, the magistrate acknowledges that relevance might be challenged on various grounds. For example, the Auditor's motion for summary judgment was very narrow, and Leslie was entitled to file affidavits and documents only insofar as they were relevant to the Auditor's motion — not to support all his claims against all the respondents. In addition, respondents might have argued that some of the documents have no relevance in mandamus. In a mandamus action, the court issues a writ compelling performance of a duty where the law demonstrates that a clear legal duty existed and the record shows that the duty has not yet been performed. E.g., State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. The question is not whether the public official was negligent. Accordingly, respondents might have argued that some of the proffered documents were directed toward an issue that simply had no relevance in mandamus: whether respondents knew or should have known that they were (allegedly) misinterpreting the law and whether respondents knew or should have known that they were (allegedly) failing to perform as required by law.
 {¶ 74} However, the magistrate believes that the court is not obliged to determine the merits of potential objections and concludes that respondents' general challenge to the evidence as irrelevant is not well taken. The same conclusion is reached in regard to respondents' general objection that Leslie did not satisfy the rules for judicial notice. In summary, the magistrate concludes that respondents have not presented a sufficient factual or legal basis for striking the affidavit or documents filed January 14, 2003.
 {¶ 75} In reaching this conclusion, the magistrate notes that a motion to "strike" evidence is not typically made in proceedings pursuant to Civ.R. 56, being more appropriate to proceedings before a jury. Typically, when a party argues under Civ.R. 56 that a document is irrelevant, the issue of relevance simply goes to the question of whether there is a material issue of fact or whether reasonable minds could reach but one conclusion when all the evidence is construed in favor of the nonmoving party. Thus, the effect of "striking" evidence in a summary-judgment consideration is not entirely clear. Respondents have not cited examples where courts have "stricken" evidence submitted in opposition to summary judgment under Civ.R. 56 or in support thereof, and, therefore, in considering respondents' motion to strike, the magistrate has considered whether respondents have demonstrated that certain evidence must be excluded under the Rules of Evidence.
 {¶ 76} Next, the magistrate considers whether Leslie's affidavit and/or the attachments filed January 14, 2003, were subject to the attorney-client privilege and must, therefore, be stricken and/or sealed. It is well established that, when the Attorney General ("AG") or an Assistant Attorney General ("AAG") shares a confidence with a state-agency client in the course of providing legal advice to that client, their communications are privileged. State ex rel. Thomas v. OhioState Univ. (1994), 71 Ohio St.3d 245. Further, when a document contains privileged attorney-client communications, a state agency is not required to release it to the public under the Public Records Act. Id.
 {¶ 77} In Thomas, the documents at issue were communications between employees of the Ohio State University ("OSU") and an attorney employed in the OSU Office of Legal Affairs, pertaining to the handling of a legal matter. The university refused to release the documents on grounds of attorney-client privilege, and Thomas filed a mandamus action to obtain the documents, arguing that the attorney-client privilege did not apply because the OSU attorney did not have a formal appointment from the AG to serve as an AAG.
 {¶ 78} The Ohio Supreme Court relied on two items of evidence. First, the court observed that OSU and the AG had entered into a "Memorandum of Understanding" under which OSU could employ attorneys but the AG must approve them and appoint them as AAGs. More importantly, the record included an affidavit from the AG's office averring that the OSU attorney had been approved as an AAG through an interview process and had been in that approved position since his OSU employment began.
 {¶ 79} The Supreme Court ruled in Thomas that, for the university to meet its "burden to establish the existence of an attorney-client privilege as to the records" concerning the attorney's legal advice, the university was not required to present an AG's letter of appointment. The court held that the affidavit of an AAG was sufficient evidence to establish that the university's in-house attorney had been "properly appointed" as an AAG. Id. at 250. The magistrate acknowledges that the Supreme Court in Thomas left open the possibility that some other type of evidence might also suffice to establish the attorney-client relationship, but the court did not address other means because the record included the affidavit that the attorney had been interviewed by the AG's office and approved to serve as an AAG, which was sufficient.
 {¶ 80} In State ex rel. Olander v. French (July 16, 1996), Franklin App. No. 96AP-501, affirmed (1997), 79 Ohio St.3d 176, this court recognized the basic principle in Thomas that records of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under the Public Records Act. However, in Olander, the issue was "whether the work product of licensed attorneys who are hired to work for a state agency without appointment as assistant attorneys general is subject to disclosure upon a public records request pursuant to R.C. 149.43."
 {¶ 81} Olander involved two attorneys employed by the Ohio Environmental Protection Agency, one serving as the Deputy Director for Legal Affairs and the other employed as Ethics and Employment Legal Counsel within the agency. This court found that the agency could not
invoke the attorney-client privilege to protect its communications with these attorneys because they were not members of the AG's office:
 {¶ 82} * * * [W]e find that attorney-client privilege does not exist between members of a given state agency or department except the Office of the Attorney General.
 {¶ 83} Further, this court indicated that the result would be no different even if the AG gave the title of "Executive Attorney General" to a government attorney.
 {¶ 84} On appeal, the Supreme Court did not address the holding as to attorney-client privilege because that issue was not before the court due to the government's failure to file a timely brief. The Supreme Court affirmed on the sole issue before it, which was the court of appeals' denial of attorney fees to the prevailing party under the Public Records Act, based on whether the state agency had acted reasonably in refusing the request for documents. The Supreme Court concluded that the agency's "claim of privilege in this particular case was reasonably grounded in the law." 79 Ohio St.3d at 179. The court further noted that, after its decision in Thomas, the state of the law was that it "had spoken strongly in favor of the privilege between attorneys and their state agency clients," but that the issue of whether that privilege extended to attorneys not appointed as AAGs "remained unresolved." Id.
 {¶ 85} With respect to respondents' second motion to strike, the documents at issue have already been placed into public view in the court's record, and respondents ask that the following documents be redacted or sealed based on attorney-client privilege:
 {¶ 86} * * * (A) Attachment 3, Memorandum from Attorney Mark Leslie to Attorney Marlo Tannous which provides legal advice; (B) Attachment 4, Memorandum and draft letters wherein Attorney Mark Leslie provided legal advice to Attorney Marlo Tannous and key OHFA Staff; (C) Attachment 5, Correspondence from Attorney Mark Leslie to OHFA Special Counsel, Attorney John Peck, which raises certain legal issues for discussion; (D) Attachment 6, E-mail from Attorney Marlo Tannous to Attorney Mark Leslie; (E) Attachment 11, Memorandum from Attorney Mark Leslie to Attorney Marlo Tannous which provides a legal opinion; [and] (F) Attachments 14, 15 and 16, a draft letter and series of e-mails and responses relating to the draft letter between Attorneys Mark Leslie, Marlo Tannous and key OHFA Staff wherein legal advice was requested and provided.
 {¶ 87} As indicated in the quoted passage, the claim of attorney-client privilege arises in several different contexts in this action. In some of the items listed, the allegedly privileged communications were made by Leslie to an agency employee (or were madeto Leslie by an agency employee). In other items, the allegedly privileged communications were made by Tannous to the state employees or were made by them to her. A third situation involves communications between two attorneys, Tannous and Leslie, which (according to respondents) were privileged communications and/or work product. Further, with respect to Attachment 5, respondents claim that privileged communications were made to a private attorney serving as special counsel to OHFA, John Peck.
 {¶ 88} As part of the argument in support of an attorney-client privilege, respondents note that the magistrate, in her January 16, 2003 decision, appeared to recognize an attorney-client relationship between Leslie and OHFA. However, a review of the decision reveals that the magistrate did not address or determine the issue of an attorney-client relationship with respect to invoking a privilege against disclosure. Rather, the magistrate — addressing the issue of standing — focused on the broad nature of the requested remedies that would require the court to engage in pervasive monitoring of a variety of discretionary, executive activities, which would be inappropriate. The magistrate opined that one of the requested remedies would require the court to monitor the activities of the DOD's chief legal counsel, Tannous (not Leslie), including monitoring of counsel's ongoing provision of legal services to the DOD, which is a highly discretionary activity. The limited point being made in the decision was that the courts will not issue a writ of mandamus to compel observance of laws generally[2] and that the general wrongs alleged by Leslie and the broad, prospective relief he requested were not cognizable in mandamus because the requested remedies, if granted, would cause undue interference in discretionary, executive matters. There was no finding with respect to Tannous' or Leslie's status with respect to the privilege against disclosure of attorney-client communications. Accordingly, the magistrate concludes that these issues have not yet been addressed or determined in this action.
 {¶ 89} Upon review of the evidence in the record with respect to the issue of the attorney-client privilege against disclosure of communications, and upon review of the current law, the magistrate concludes that respondents have not met their burden of proof. This court held in Olander that the attorney-client privilege does not exist between a state agency and its in-house attorney unless the attorney is a member of the AG's office. Respondents challenge the Olander holding, but the magistrate believes that, until and unless that holding is overruled, it must be applied by a magistrate of this court. With respect to the evidence in this action, the magistrate concludes that respondents have not submitted sufficient evidence to meet their burden of proof that Leslie, Tannous, or Peck were properly appointed or approved to serve as assistants to the AAG.
 {¶ 90} In Thomas, the Supreme Court found that an affidavit sworn by an AAG regarding an interview process and approval by the AG's office was sufficient evidence to establish that the university's in-house attorney had been properly appointed as an AAG. In the present action, however, respondents have offered no affidavit, of any kind, to establish that Leslie or Tannous, while employed by the DOD, were appointed or otherwise designated to act as AAGs.
 {¶ 91} Respondents have not submitted any admissible evidence to establish the status of Leslie or Tannous as attorneys whose communications were privileged under the principles set forth in Thomas
or Olander. For example, although the parties agree that Leslie's title was "Chief of Compliance" and that Tannous was "Chief Legal Counsel" for the DOD, respondents submitted no admissible evidence to establish the nature of their duties and clients, nor have respondents submitted any admissible evidence to establish the legal status of Leslie or Tannous vis-à-vis the AG.
 {¶ 92} Further, although respondents attached to their February 11, 2003 motion a copy of a Memorandum of Understanding ("Understanding") between the governor and the AG, that Understanding was insufficient to establish an attorney-client privilege for two distinct reasons. First, the Understanding between the governor and the AG is materially different from the one described in Thomas between OSU and the AG.
 {¶ 93} The purpose of the Understanding between the governor and the AG was "to clarify the working relationship" between the AG and Client Counsel. (The term "Client" includes the governor and state agencies, boards, and commissions under his control, and the term "Client Counsel" includes attorneys employed directly by executive departments/agencies whose duties include the rendering of legal advice and counsel to the Client.) The Understanding states that the AG will serve as legal counsel in litigation matters, and, where the Client conducts administrative proceedings, the Client and Client counsel are responsible for monitoring, preparing for, and conducting the hearings. Only where necessary, and where agreed to by the individual Clients and the AG, will the AG provide representation to the Client at administrative hearings.
 {¶ 94} The Understanding further states that Client Counsel "holds primary responsibility for providing legal and regulatory advice to the Client in all issues" except those directly related to litigation and "is also responsible for carrying out daily in-house delivery of legal services," which may include advising on employment matters, drafting and administering departmental policies, drafting contracts, and drafting responses to public-records requests. The governor stated the intention that the number of executive in-house Client Counsel positions would not increase and that the governor would consult with the AG before creating additional positions to serve legal needs. The AG recognized and agreed that legal communications between the Client and Client Counsel would be considered privileged under the ethical canons; however, the AG acknowledged that "one Ohio appellate court has held that the attorney-client privilege does not exist between Client and Client Counsel." The AG commented, however, that the facts of that case did not involve a Client Counsel who had been designated as an "Executive Attorney General" by the AG.
 {¶ 95} Nowhere does this Understanding state that, although the state's executive agencies and departments can employ attorneys, the AG must approve them and appoint them as AAGs. Thus, the Understanding does not include the important conditions that were viewed as significant inThomas.
 {¶ 96} Further, the Understanding at no point states that Tannous has been designated as an Executive AG or as an AAG, nor does it state generally that the "chief legal counsel of the DOD" has been designated as an Executive AG or AAG. Although respondents write in their motion that Tannous was "appointed by the Attorney General's Office as an Executive Attorney General," respondents have failed to provide sworn testimony as was presented in Thomas.
 {¶ 97} Moreover, although respondents attached a copy of the Understanding to their motion, respondents have not provided a certified or stipulated copy of this document as evidence in mandamus. See Loc.R. 12(G). In sum, respondents have made a number of assertions but have submitted no admissible evidence to support their assertions.
 {¶ 98} Likewise, respondents failed to provide a certified or stipulated copy of the letter from the AG appointing Peck as special counsel to the AG. Despite respondents' insistence that Leslie's documents must be stricken because he failed to authenticate the copies he proffered to the court, respondents have offered no authenticated copies of the documents on which they rely to satisfy their burden of proof.
 {¶ 99} Based on all the foregoing, the magistrate concludes that respondents have not submitted sufficient evidence to prove that Tannous, Leslie, or Peck were appointed or approved to assist the AG in providing legal services to the DOD or OHFA. Accordingly, respondents have failed to meet their burden of establishing an attorney-client privilege with respect to Leslie's affidavit and documents filed January 14, 2003. Therefore, the magistrate denies the February 11, 2003 motion to strike and seal portions of the affidavit and documents based on attorney-client privilege.
 {¶ 100} In addition, the magistrate finds that respondents have not adduced a sufficient factual or legal basis for the broad protective order they seek under Civ.R. 26. Last, the magistrate notes that, in the February 11, 2003 motion, respondents reiterated their request to strike and/or seal the endnotes. The magistrate has already stricken the endnotes, and that ruling remains unchanged; however, respondents have not set forth sufficient grounds for sealing the endnotes based on attorney-client privilege, and the magistrate again denies the request to seal the endnotes.
 {¶ 101} In summary, with respect to respondents' motions filed February 11, 2003, captioned "Second Motion to Strike and Seal Portions of the Record and Motion for Protective Order," the magistrate denies the motion to strike and seal, denies the motion for protective order, and denies all other relief requested.
 {¶ 102} Next, the magistrate addresses respondents' motion filed February 28, 2003, captioned "Motion to Strike Reply Brief to Motions to Strike." In this motion, respondents ask the court to strike Leslie's February 20, 2003 "Reply of Relator to Motions to Strike and Seal Portions of the Record and Motion for a Protective Order" as untimely. In addition, respondents ask the court to strike and seal those portions of the reply and attachments that are protected by the attorney-client privilege. Specifically, respondents ask the court to strike and seal the following:
 {¶ 103} * * * Attachments B D — Letters to William Klatt, First Assistant Attorney General (AAG) from Thomas Washbush, then General Counsel for Development regarding a personnel matter; Attachment F — E-mail from attorney Peter Patitsas to Thomas Washbush regarding a personnel matter; Attachment H-2 — E-mails and a Memorandum between current General Counsel for Development, Marlo Tannous and key staff at OHFA requesting and providing legal advice; Attachment H-3 H-4 — E-mails between General Counsel Tannous, Development's Human Resources Department and key staff at OHFA regarding a personnel matter; and Attachment I — E-mails between General Counsel Tannous and key staff at OHFA regarding a legal matter.
 {¶ 104} The magistrate notes that the attorney-client privilege is asserted for Attachments H-2, H-3, H-4, and I based on the role of Tannous as counsel. However, as discussed above, respondents have not presented admissible evidence to establish that Tannous comes within the criteria set forth in Thomas or Olander.
 {¶ 105} With respect to Attachments B, D, and F, the magistrate finds that the communications do not involve the giving or receiving of legal advice. Rather, the writers were merely giving routine information about a new hire who was coming to the DOD from the AG's office.
 {¶ 106} With respect to Attachment F, the magistrate notes that the record includes no evidence to establish that, at the time of the communication, either Washburn or Patitsas (who were apparently DOD employees according to the documents) were within the criteria set forth in Thomas or Olander. Respondents simply made no attempt to file evidence to establish the status of either Washburn or Patitsas as attorneys whose communications were protected as attorney-client communications underThomas or Olander. Thus, respondents have not established that the court must seal the listed documents pursuant to the attorney-client privilege against disclosure.
 {¶ 107} However, the magistrate notes that Leslie made no attempt to authenticate the documents he filed on February 20, 2003. Accordingly, the magistrate concludes that the attachments filed February 20, 2003, must be excluded. Therefore, the magistrate grants the motion to strike the attachments to Leslie's February 20, 2000 reply.
 {¶ 108} As for the request to strike the February 20, 2003 reply as untimely, the magistrate notes that Leslie was responding in one memorandum to two sets of motions filed by respondents — the motions filed January 27, 2003 and the motions filed February 11, 2003 — both of which asked the court to strike and seal portions of the record and to issue a protective order. Thus, Leslie's response was filed within nine days of the filing of the second motion (and within about six days of service of the second motion).
 {¶ 109} Respondents rely on App.R. 15, which states that a party may file a response in opposition to a motion "within ten days after service of the motion." Application of that rule would render untimely Leslie's reply to the first set of motions, although his reply to the second set of motions would be timely. However, for several reasons, the magistrate declines to apply App.R. 15 to strike part of the reply filed February 20, 2003.
 {¶ 110} First, it is important to note that, in the first set of motions, respondents did not provide all their arguments but told Leslie and the court that they would provide their arguments in a "subsequent" motion. Given that respondents did not present their legal discussion regarding attorney-client privilege until their second set of motions, the magistrate concludes that Leslie's filing of a joint response to both motions within 10 days of the latter filing was within a reasonable time and did not cause delay. Leslie's response to the second set of motions was timely, and the magistrate sees no reason to strike a portion of the reply under these circumstances.
 {¶ 111} Further, the court's order of reference states that the "Civil Rules" shall apply to the present action. The magistrate concludes that application of one of the Appellate Rules to strike a party's filing would not be appropriate. The magistrate sua sponte grants leave to Leslie to file his response to the first set of motions jointly with his response to the second set of motions, as filed on February 20, 2003.
{¶ 112} Therefore, with respect to respondents' motion filedFebruary 28, 2003, captioned "Motion to Strike Reply Brief to Motions toStrike," the magistrate grants the motion to strike the attachments toLeslie's February 20, 2000 reply but denies the motion to strike thereply brief as untimely.
 {¶ 113} Last, the magistrate notes that respondents asserted in passing that Leslie also violated an ethical duty to maintain the confidences and secrets of his clients under the Ohio Code of Professional Responsibility. The magistrate acknowledges that Disciplinary Rule 4-101 states that a lawyer may not knowingly reveal a confidence or secret of his client except in certain circumstances. A "confidence" is information protected by the attorney-client privilege, and a "secret" is other information gathered in the professional relationship that the disclosure of which would be embarrassing or likely to be detrimental to the client. D.R. 4-101(A). The disciplinary rule goes on to state, however, the circumstances under which a lawyer may reveal confidences and secrets.
 {¶ 114} Due to the incomplete record in this action, the magistrate declines to address the issue of whether Leslie breached duties under the Code of Professional Responsibility. It would be inappropriate to address a matter of such importance on the inadequate evidentiary record in the present action, and respondents have not presented a legal discussion or precedents to support their assertion that Leslie breached a duty under D.R. 4-101.
 {¶ 115} In summary, the following rulings have been set forth in the text above:
 {¶ 116} With respect to the January 27, 2003 motions captioned "Motion to Strike and Seal Portions of the Record and Motion for a Protective Order," the magistrate grants respondents' motion to strike the endnotes in Leslie's December 30, 2002 memorandum but denies respondents' motion to seal and for protective order.
 {¶ 117} With respect to respondents' motions filed February 11, 2003, captioned "Second Motion to Strike and Seal Portions of the Record and Motion for Protective Order," the magistrate denies the motion to strike and seal, denies the motion for protective order, and denies all other relief requested.
 {¶ 118} In addition, the magistrate grants the February 28, 2003 motion to strike the attachments to Leslie's February 20, 2000 reply but denies the motion to strike the reply brief as untimely.
P.A. DAVIDSON, MAGISTRATE.
[1] For example, a reasonable argument could be made that Leslie failed to provide an acceptable foundation for copies of documents copied from websites.
Although the authentication requirements for documents copied from the internet may not yet be fully established, the magistrate notes that assurances of authenticity are especially important due to the technical ease of altering downloaded materials and, in addition, the magistrate notes that universities have established minimum requirements for citing electronic sources in scholarly works. See, generally, J.R. Walker 
T. Taylor, The Columbia Guide to Online Style (Col. Univ. Press, 1998) § 2.8 (providing instructions on how to cite materials found on the world wide web and stating that the writer must give the author's name, the full title of the work, any version or file numbers, the date of the document, the electronic protocol, the full URL including the path or directories necessary to access the document, and the date the document was accessed on the website); Report of the Committee on OpinionsCitation, Conference of Chief Justices, January 1999 (Nat'l Center for State Courts, Williamsburg, Virginia), p. 5 (expressing concern that copies of documents downloaded from the internet may be modified and stating that a "story making the rounds is that someone downloaded a copy of a state constitution and proceeded to add individual rights to the document").
Thus, although the magistrate recognizes that government publications may be self-authenticating in some circumstances under Evid.R. 902, the magistrate would expect the proponent of a downloaded document to provide, at a minimum, the web address and path where the document was located, the date and title of the document, the date the document was accessed/-downloaded, and a sworn statement that the content of the copy submitted to the court was not altered from the content appearing on the website. In short, although the legal requirements for admissibility of downloaded documents may not be well established, a party's statement that "I downloaded these pages from the internet" is probably not sufficient to authenticate a downloaded document.
[2] State ex rel. Tillimon v. Weiher (1992), 65 Ohio St.3d 468.